# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION


CHRISTOPHER B. MCGUIRE, et al.,

                Plaintiffs,

v.                                  CIVIL ACTION NO.   5:14-cv-14299

JIM WALTER HOMES, LLC, et al.,

                Defendants.


## MEMORANDUM OPINION AND ORDER


The Court has reviewed the *Defendant Green Tree Servicing LLC's and Defendant Jim Walter Homes, LLC's Motion for Summary Judgment* (Document 12)[1] and *Memorandum in Support of the Motion for Summary Judgment* (Document 13), the *Plaintiffs' Memorandum of Law*

---

[1]     The Defendants attach the following as exhibits to their *Motion for Summary Judgment* (Document 12): (1) a four page copy of a Real Estate Purchase Agreement, dated April 10, 2007 (Exhibit A, Document 12-1); (2) a three page copy of a West Virginia Construction Agreement, undated (Exhibit B, Document 12-2); (3) a twenty-eight page copy of a Note and Credit Line Deed of Trust, dated August 13, 2007 (Exhibit C, Document 12-3); (4) a one page copy of Inspection Certificate, dated February 21, 2008 (Exhibit D, Document 12-4); (5) a five page copy of a Loan Modification, dated February 26, 2008 (Exhibit E, Document 12-5); (6) a five page copy of a Loan Deferral Agreement, dated August 29, 2011 (Exhibit F, Document 12-6); (7) a three page copy of a General Release, dated August 29, 2011 (Exhibit G, Document 12-7); (8) a four page copy of documents from the West Virginia Secretary of State—Online Data Services, dated July 14, 2014 (Exhibit H, Document 12-8); (9) a forty-five page copy of the McGuires' Chapter 7 Voluntary Petition, dated May 16, 2012 (Exhibit I, Document 12-9); (10) a sixteen page copy of Notices sent by Green Tree to the McGuires, various dates (Exhibit J, Document 12-10); (11) a three page copy of a Discharge of Debtor, dated September 4, 2012 (Exhibit K, Document 12-11); (12) a two page copy of the Final Decree Closing Case, dated October 12, 2012 (Exhibit L, Document 12-12); (13) a one page Notice of Trustee Sale of Valuable Real Estate, undated (Exhibit M, Document 12-13); (14) a four page copy of a Notice of Foreclosure and Continuing Right to Cure Default, dated August 1, 2013 (Exhibit N, Document 12-14); (15) a four page copy of a Motion to Reopen case to Amend Schedules and Allow Debtor to Prosecute Adversary Action, dated August 15, 2013 (Exhibit O, Document 12-15); (16) a nine page copy of Summary of Schedules, Amended, dated August 15, 2013 (Exhibit P, Document 12-16); (17) a two page copy of an Order Granting Motion to Reopen Case and Allowing Thirty (30) Days to File Necessary Pleadings; Directing Counsel to Serve this Order, dated August 21, 2013 (Exhibit Q, Document 12-17); and (18) a nine page copy of the Complaint from Case No. 5:13-ap-05014, filed August 30, 2013 (Exhibit R, Document 12-18).

*in Opposition to Defendants' Motion for Summary Judgment* (Document 14),[2] and the Defendants' *Reply in Support of Defendant Green Tree Servicing LLC's and Defendant Jim Walter Homes, LLC's Motion for Summary Judgment* (Document 17).  For the reasons stated more fully herein, the Court finds that the Defendants' motion for summary judgment should be granted in part and denied in part.

## I.        FACTUAL AND PROCEDURAL HISTORY

This action arises out of the borrower-lender relationship between Christopher and Nona McGuire (together, the McGuires) and Jim Walter Homes, LLC.[3]  Specifically, in approximately April of 2007, the McGuires purchased an undeveloped piece of real property located in Bradley, West Virginia, with the plan of purchasing a home to be built on the land.  Thereafter, the McGuires signed a "West Virginia Construction Agreement relating to the purchase of a manufactured home to be built" on the subject property.  (Document 13 at 2.)  Commensurate with that agreement, the McGuires also "executed a note and deed of trust in favor of Walter Mortgage Company for $150,381.00 with an interest rate of 11.5%." [4]   (*Id.*)

The McGuires allege that they were induced to enter into the home construction loan when Jim Walter Homes "represented that they would provide the McGuires with a $3,000.00 credit,

---

2        The Plaintiffs attach the following as exhibits to their *Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment* (Document 14): (1) a two page copy of an Affidavit from Christopher B. McGuire, dated August 4, 2014 (Exhibit A, Document 14-1); and (2) a seven page copy of a Judgment Order in an unrelated case, Civil Action No. 10-C-930(B), dated August 23, 2012 (Exhibit B, Document 14-2).

3        Defendant Walter Mortgage Company, LLC "is the holder of Plaintiffs' indebtedness."  (See Document 12-18 at 2.)  Further, Defendant Walter Mortgage "was also the servicer of Plaintiffs' account from July 2007 through December 2011," when it merged with Defendant Green Tree Servicing LLC.  (*Id.*)  The Court notes that merger took place on or about March 13, 2012.  (*See* Document 13 at 3.)

4        The Court notes that the parties dispute the applicable interest rate tied to the home construction loan.  The Plaintiffs state that loan was for $170,300 at 9.25% interest, while the Defendants maintain the loan was for $150,381 at 11.5% interest.  (*Accord* Document 13 at 2; Document 14 at 2.)  The Court need not resolve these competing arguments, however, as resolution of the contested interest rate is not material to the instant inquiry.

which they could apply to their account in any way," as well as the representation that, "if the McGuires purchased the home, they could receive a $100 rebate for every person [they] referred to [Jim Walter Homes]."   (Document 14 at 2.)   The McGuires took possession of the manufactured home in February of 2008, indicating that there were no construction defects or issues. (Document 13 at 2.)   Also in that month, the McGuires "executed a loan modification that modified the construction loan to a permanent loan.   The modification also reduced the principal amount of the note to $148,782.00."   (*Id.*)

The McGuires fell behind on their payments, however, and in August of 2011, they executed a (1) General Release and (2) Loan Deferral Agreement with Walter Mortgage Company (WMC).   (Document 14 at 3.)   They were represented by counsel in the negotiations and ultimate execution of these agreements.   The Loan Deferral Agreement, dated August 25, 2011,[5] embodied the parties' understanding that WMC would defer four of the Plaintiffs' payments to the end of the note's life, in exchange for a release from the McGuires that they "had no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument." (Document 12-6 at 2.)   Thereafter, on August 29, 2011, the McGuires executed a General Release, stipulating that they:

> release and forever discharge [WMC] and its successors . . . of and from any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action, of every nature, character and description, known or unknown, which [Plaintiffs] now hold or own, or has at any time heretofore owned or held, or may at any time hereafter own or hold, by reason of any matter, cause or thing whatsoever occurred, done, omitted or suffered to be done prior to the date of this instrument in connection with the servicing of and/or any activity undertaken in connection with the

---

5   While the Loan Deferral Agreement is dated August 25, 2011, it does not appear that the McGuires executed the agreement until August 29, 2011, when they also executed the General Release.   (*See* Exhibit F, Document 12-6 at 3.)

> collection that secured indebtedness evidenced by that note and
> deed of trust dated August 13, 2007, which was executed by the
> [Plaintiffs] in connection with the construction and financing of
> their house or any payments due in connection therewith.

(Document 12-7 at 1.)   The McGuires further agreed that they would "forever refrain and forbear from commencing, instituting or prosecuting any lawsuit, action or other proceeding against [WMC] based on, arising out of, or in connection with any claim, debt, liability, demand, obligation, cost, expense, action or cause of action that is released and discharged by reason of this instrument."   (*Id.* at 2-3.)   Consideration for the General Release was one dollar ($1.00) as well as "other good and valuable consideration, receipt whereof is hereby acknowledged."   (*Id.*)

On or about May 16, 2012, the McGuires filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Southern District of West Virginia.   It is undisputed that the McGuires did not list any claims or challenges to WMC and/or the loan documents in their original Chapter 7 Petition.   (Document 13 at 3.)   The McGuires received a discharge on September 4, 2012, and their bankruptcy matter was closed on October 12, 2012.   (See *In re: Christopher Brian McGuire and Nona LeeAnn McGuire*, Case No. 5:12-bk-50102 (Bankr. S.D. W.Va. 2012).   A foreclosure sale was scheduled for their property on August 27, 2013. (Document 14 at 5.)   The McGuires then petitioned to reopen their bankruptcy case to file an adversary proceeding against WMC, as well as file an amended schedule listing a "claim" against Jim Walter Homes.   (Document 13 at 4.)   On August 21, 2013, the Bankruptcy Court granted said motion, and the McGuires initiated an adversary proceeding against the Defendants on August 30, 2013.   (*Id.*)

The adversary proceeding complaint alleges that the Defendants induced the McGuires to enter into the Note and Credit Line Deed of Trust, and that there were several defects ultimately

discovered in the home.   (*Id.* at 4.)   The McGuires also state that Green Tree engaged in abusive debt collection practices in violation of the West Virginia Consumer Credit Protection Act (WVCCPA).   (*Id.*)   The complaint lists four counts: "(1) unconscionable inducement; (2) illegal referral scheme, (3) violation of the Mortgage Lender, Broker and Servicer Act, W.Va. Code § 37-17-17 and (4) violations of section 2-125(d) of the WVCCPA."   (*Id.* at 4-5.)   The McGuires pray for actual damages, equitable relief, statutory penalties in the amount of $4,800 for each violation of the WVCCPA and attorney fees and costs.   (*Id.* at 5.)

On October 8, 2013, Defendants Green Tree Servicing, LLC and Jim Walter Homes, LLC filed a *Motion to Withdraw the Reference* (Case No. 5:13-mc-128, Document 1), and accompanying *Memorandum in Support of the Motion to Withdraw the Reference* (Case No. 5:13-mc-128, Document 2).   On November 12, 2013, the parties filed a *Stipulation and Order to Withdraw the Reference* (Document 4).   Thereafter, Civil Case No. 5:14-cv-14299 was opened, and on July 18, 2014, the Defendants filed the *Motion for Summary Judgment* and *Memorandum in Support*.   The McGuires filed their *Memorandum in Opposition* on August 4, 2014.   The Defendants filed their *Reply* on August 11, 2014.

## II.    STANDARD OF REVIEW

The well-established standard for consideration of a motion for summary judgment is that summary judgment should be granted if the record, including the pleadings and other filings, discovery material, depositions, and affidavits, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian*

*Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the nonmoving party must satisfy its burden of showing a genuine factual dispute by offering more than "[m]ere speculation" or a "scintilla of evidence" in support of its position.   *Anderson*, 477 U.S. at 252; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.   On the other hand, if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element … necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

### III.   DISCUSSION

Green Tree argues that the Plaintiffs have already settled the claims contained in Counts I, II, and III of their complaint, and further, that their personal liability surrounding the loan was

discharged in bankruptcy, and thus, they do not have standing to pursue their WVCCPA claim. The Defendants stress that "settlement documents are binding contracts" and the General Release and Loan Deferral Agreement's terms are enforceable and include the origination claims asserted in the Complaint." (Document 13 at 6.) The Defendants cite state and federal case law applicable to contracts and their enforceability as they pertain to settlements and releases, and state that "[t]here is no genuine issue of material fact that Counts I, II, and III were previously resolved by the parties via settlement. Thus, Defendants are entitled to summary judgment as a matter of law on Counts I, II, and III of the Complaint." (*Id.* at 7-9.)

The Defendants then argue that the WVCCPA claim is barred because the Plaintiffs "received a bankruptcy discharge." (*Id.* at 9.) The Defendants also aver that the Plaintiffs are not "allegedly obligated" to pay the debt, and cite *Fabian v. Home Loan Center, Inc.*, 2014 WL 1648289, (N.D. W.Va. 2014) (unreported) for support. (*Id.* at 11.) They stress that the mailings sent to the Plaintiffs were explicit in declaring that they were not a bill and were for informational purposes only. (*Id.* at 12.) Thus, the Defendants argue that because the Plaintiffs' personal responsibility for the Note was discharged in bankruptcy, they are not "consumers," and there is no "claim" alleged due, as those terms are defined in the WVCCPA. (*Id.* at 12-13.) Simply put, they argue that the WVCCPA is inapplicable to the instant dispute.

The McGuires disagree, and respond that they never released their origination claims contained in Counts I through III when signing the General Release and Loan Deferral Agreement. "It was the McGuires understanding that the agreement only released servicing and collection claims." (Document 14 at 6) (internal citation omitted.) They also maintain that the Loan Deferral Agreement "does not contradict their position: the McGuires merely agreed that they

were unaware of any defense to their obligation." (*Id.*) "Notably, the Loan Deferral Agreement contains no language that would bar the McGuires from asserting their origination claims. In sum, there is no evidence that the parties mutually assented to the release of the McGuires' origination claim[s]." (*Id.* at 6-7.) Additionally, the McGuires argue that there was no valuable consideration for the release of their origination claims. (*Id.* at 7.)

Regarding the WVCCPA claim, the McGuires aver that they were allegedly obligated to pay the loan because the debt created by the secured interest was not extinguished with their personal liability in the bankruptcy discharge. (*Id.* at 7-8.) They cite *Croye v. GreenPoint Mortg. Funding, Inc.*, 740 F.Supp.2d 788 (S.D. W.Va. 2010) (Copenhaver, J.) for support and allege that the Defendants "treated the McGuires as though they were obligated to pay on the loan by contacting them with repeated collection attempts and demanding payment on the credit agreement." (*Id.* at 9.) Interestingly, the McGuires allege that because Green Tree initiated a foreclosure sale, that effort "suggest[s] the existence of an alleged obligation on [the McGuires] to pay the mortgage loan." (*Id.* at 9.) (internal citation omitted.) Further, the Plaintiffs state that *Fabian* actually supports their position because they "have produced evidence that Green Tree repeatedly asserted they were required to pay the debt." (*Id.* at 10.) (citing McGuire Aff. ¶ 5.)

The Defendants reply simply that they are entitled to summary judgment because the Plaintiffs previously settled and compromised the claims they are now asserting, and their attempt to read the deferral agreement independently of the simultaneously executed general release is misleading. (Document 17 at 2-3.) They also argue there was sufficient consideration because "the parties agreed to defer four payments on the loan." (*Id.* at 3.) The Defendants stress that the language of the Loan Deferral Agreement was not limited to the time period in which it was

8

signed, "or what Plaintiffs knew or were aware at that time," and give great import to the fact that Plaintiffs were represented by counsel during the drafting and execution of the agreements.  (*Id.* at 4-5.)

The Defendants also contest the notion that the Plaintiffs were still obligated to pay the mortgage, noting that the "Plaintiffs' response misses a critical distinction between personal obligation for a debt and a security interest for a debt and, thus, argues the WVCCPA applies to [them]."  (*Id.* at 5.)  The Defendants stress that they maintain a right of repossession as the lienholder, or the "*in rem* rights that a creditor retains after a discharge of personal responsibility in bankruptcy.  If Plaintiffs wish to retain property, even though they are no longer personally responsible for the debt, they must remit payments to the secured creditor."  (*Id.* at 7.)  The Defendants note that the "glaring fallacy of Plaintiffs logic is simple: if Plaintiffs did, in fact, remain obligated on the debt, then a bankruptcy discharge would have no meaning."  (*Id.* at 7.)  Further, the Defendants argue that the affidavit of Christopher McGuire did not state that he was told he was "personally liable" for the debt, only that Green Tree was seeking payment and would demand the full amount when he spoke with them.  (*Id.* at 8.)  In short, they argue that the McGuires cannot circumvent the plain language contained in W. Va. Code § 46A-2-122, and, thus, the Defendants are entitled to summary judgment as to Count IV.

As an initial matter, the Court notes that it possesses jurisdiction over the instant bankruptcy matter pursuant to 28 U.S.C. §§ 1334 and 157(d).  "Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11."  28 U.S.C. § 1334(a).  While matters may be referred to the bankruptcy court within the jurisdiction of the District Court, pursuant to 28 U.S.C. 157(a), the District Court may

also withdraw the order of reference and exercise its original jurisdiction over the matter under 28 U.S.C. 157(d).

The Court finds that the Plaintiffs are barred as a matter of law from pursuing their claims contained in Counts I through III due to the Loan Deferral Agreement and General Release.   The uncontested factual record indicates that the McGuires, while represented by counsel, agreed that they had "no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument."   (Document 12-6 at 2.)   Further, the Plaintiffs agreed that they

> do hereby release and forever discharge [WMC] . . . of and from any and all claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action, of every nature, character and description, known or unknown, which [Plaintiffs] now hold or own, or has at any time heretofore owned or held, or may at any time hereafter own or hold, by reason of any matter, cause or thing whatsoever occurred, done, omitted or suffered to be done prior to the date of this instrument in connection with the servicing of and/or any activity undertaken in connection with the collection that secured indebtedness evidenced by that note and deed of trust dated August 13, 2007.

(Document 12-7 at 1.)   The McGuires' argument that they were only releasing "claims of which they were aware at that time," is unavailing.   The intent of the parties, as represented by the simultaneous execution of two clear and unambiguous documents, was that the McGuires released or otherwise gave up "any defense to the obligations of the Note and/or Security Instrument." (Document 12-6 at 2.)    It is simply inappropriate for the Court to ignore the plain language of the documents or read omitted terms into the documents, after the fact.

For similar reasons, the argument that the McGuires received no valuable consideration for their execution of the documents is unavailing.   The plain text of the General Release indicates that the McGuires enjoyed the deferral of four payments as consideration.   The McGuires'

10

argument that this is not adequate consideration because it "does not waive any payments or result in WMC forgoing any payment due under the Note and Deed of Trust" is ineffective on the face of the document.   "The term consideration has been defined as some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another.   A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract."   *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 556 (W. Va. 2012) (internal citations and quotations omitted.)

Clearly, the McGuires received a benefit. They were no longer obligated to tender four payments, each valued at approximately $1,489.21, with principal and interest, within the time schedule originally contemplated and agreed upon by the parties.   As the McGuires acknowledge in their response in opposition, the Defendants agreed to bring their account current.   In other words, the Defendants agreed to push back their right to four timely payments from the McGuires. "A valuable consideration, however small, if bargained for in good faith in the absence of fraud will be sufficient to sustain a contract."   *Wetzel v. Watson*, 328 S.E.2d 526, 530 (W. Va. 1985) (internal citation omitted) (emphasis added.)   Thus, because the McGuires released their right to any claim, challenge, or defense to the obligations of the Note and/or Security Instrument, and because the McGuires received valuable consideration for their release, there are no genuine issues of material fact and, thus, summary judgment must be granted as to Counts I, II, and III.

The same cannot be said for Count IV of the Plaintiffs' complaint.   Simply put, there is evidence that is sufficient to allow a reasonable jury to return a verdict in the McGuires' favor as to the WVCCPA claim.   West Virginia Code § 46A-2-122 defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."   W. Va. Code § 46A-2-122(a) (emphasis

added.)   Likewise, § 46A-2-122 defining "claim" and "debt collection" also refer to "alleged obligations" and debts "alleged to be owed."   W. Va. Code §§ 46A-2-122(b), 46A-2-122(c). "The term "alleged obligation" extends the reach of the [WVCCPA] to certain collection activities conducted without regard to whether the debt is actually owed—as in *Croye*, where the lender repeatedly asserted that the debtor was *required* to pay the debt although the debtor had no personal obligation."   *Fabian*, 2014 WL 1648289 at * 6.

The Court agrees with the Defendants that the McGuires' personal liability was extinguished when they received a discharge in bankruptcy, but finds that there is a genuine dispute as to whether the Defendants contacted the McGuires demanding payment after their bankruptcy case had closed.

Specifically, viewing all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the McGuires, the record reveals that the McGuires were repeatedly contacted by Green Tree—sometimes as often as four to five times per day—seeking payment on the account after their bankruptcy.   (*See* Document 14-1 at 2.)   Christopher McGuire further states that "[w]hen Green Tree would leave a message, the representative would often state that if we called Green Tree back, it would work with us to bring the account current.   However, when we called back, Green Tree would demand the full amount due."   (*Id*. at 2.)   While the Defendants have attached, as exhibits, several examples of the mailings that indicate they are not a bill and that the McGuires do not owe any money if they received a discharge in Chapter 7 bankruptcy, the Defendants still have offered no counter to the McGuires' allegation of calls and demands for payment after the Chapter 7 discharge.   Even if the McGuires' personal liability was

discharged in bankruptcy, the WVCCPA still encompasses debt collectors' phone calls regarding "claims owed . . . or alleged to be owed or due by a consumer."   W. Va. Code. § 46A-2-122(c).

Therefore, the Court finds that there exists genuine issues of material fact as to the Plaintiffs' WVCCPA claim, and the Defendants' motion for summary judgment as to Count IV must be denied.

## CONCLUSION

Wherefore, after careful consideration, based on the findings above, the Court **ORDERS** that the *Defendant Green Tree Servicing LLC's and Defendant Jim Walter Homes, LLC's Motion for Summary Judgment* (Document 12) be **DENIED IN PART AND GRANTED IN PART**. The Court **ORDERS** that the motion be **GRANTED** as to **Counts I, II, and III**, and **DENIED** as to **Count IV**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      October 14, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

13